IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SIGNATURE FINANCIAL LLC, d/b/a SIGNATURE FINANCIAL AND LEASING LLC, <br><br>*Plaintiff,* <br><br>v. <br><br>THE STONE OUTLET OF FLORIDA, LLC and ERNESTO SANCHEZ, a/k/a ERNEST SANCHEZ, <br><br>*Defendants.* | CASE NO. 8:22-cv-2795 |

## COMPLAINT

Plaintiff Signature Financial LLC, d/b/a Signature Financial and Leasing LLC ("Signature" or "Plaintiff"), by and through its attorneys, complaining of defendants, The Stone Outlet of Florida, LLC ("Stone") and Ernesto Sanchez, a/k/a Ernest Sanchez ("Sanchez", and together with Stone, collectively, the "Defendants"), and for causes of action respectfully asserts as follows:

## THE PARTIES

1. Signature is a New York limited liability company maintaining an office for the transaction of business in Melville, New York. The sole member of Signature is Signature Bank, which is a banking corporation duly organized and existing under the laws of the State of New York, with its corporate headquarters and principal place of business in New York. Therefore, since Signature Bank is a citizen of the State of New York, Signature is not a citizen of the State of Florida for diversity jurisdiction purposes.

2. Stone is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located at 5115 Shadowlawn Avenue, Tampa, Florida 33610. The sole member of Stone is Sanchez who is domiciled in and a citizen of the State of Florida and whose true, fixed, and permanent home is located within the Middle District of Florida and located at 6301 Forrestal Drive, Tampa, Florida 33625. Therefore, since the sole member of Stone is a citizen of the State of Florida, Stone is deemed to be a citizen of the State of Florida for diversity jurisdiction purposes.

3. Sanchez is an individual who is domiciled in the State of Florida and whose true, fixed, and permanent home, as evidenced by driver's license records demonstrating his intent to remain, is located within the Middle District of Florida and located at 6301 Forrestal Drive, Tampa, Florida 33625. Therefore, since Sanchez is domiciled in Florida, Sanchez is a citizen of the State of Florida for diversity jurisdiction purposes.

## JURISDICTION

4. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and the Plaintiff and Defendants are citizens of different states.

## VENUE

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which all Defendants reside.

## FIRST COUNT – BREACH OF CONTRACT
### (AGAINST STONE)

6. On or about April 5, 2021, Stone, as borrower, entered into that certain Commercial Finance Agreement (as any time modified and/or amended, the "Agreement") with Engs Commercial Finance Co. ("ECFC"), as creditor and secured party, whereby Stone agreed to

purchase a certain new Poseidon T-Rex X Dual Table Machining Center, with all accessories, attachments, and components, bearing serial number TRXDT21-22-858 (the "Collateral"), as more particularly described in and subject to the Agreement, and ECFC agreed to finance the purchase of the Collateral by Stone.  (A true and correct copy of the Agreement is attached hereto as **Exhibit "1"** and the terms and conditions thereof are incorporated herein by reference.)

7.      Pursuant to the Agreement, Stone agreed, among other things, to make two (2) installment payments each in the amount of $5,459.61, followed by three (3) installment payments each in the amount of $99.00, followed by seventy-nine (79) consecutive monthly installment payments each in the amount of $5,459.61 to ECFC (payments to be due on the fifteenth (15th) day of each month), plus any applicable taxes and other amounts due and owing under the Agreement, as well as certain advance payments and fees set forth in the Agreement.

8.      In accordance with the terms of the Agreement, Stone granted to ECFC a first priority security interest in and to the Collateral, including all replacements thereof and all receivables, rebates, discounts, credits, payments, refunds, proceeds, all accounts, general intangibles, contract rights, insurance proceeds, instruments, proceeds and products and chattel paper relating to the Collateral, to secure payment of the obligations of Stone to ECFC under the Agreement and all other then-present and future indebtedness of Stone to ECFC.

9.      ECFC duly perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Department of the State of the State of Florida.  (A true and correct copy of ECFC's UCC-1 Financing Statement (the "UCC-1") with respect to the Collateral is attached hereto as **Exhibit "2"** and is incorporated herein by reference.)

10.     On or about May 20, 2021, ECFC assigned all of its right, title, and interest in and to the Agreement, the Collateral, and the Guaranty (as defined herein) to Signature.  Specifically,

ECFC assigned the remaining two (2) installment payments each in the amount of $99.00 and seventy-nine (79) monthly installment payments each in the amount of $5,459.61 due under the Agreement from Stone to Signature. (A true and correct copy of the notice of assignment sent by ECFC to Stone informing Stone of ECFC's assignment of the Agreement, Collateral, and Guaranty to Signature is attached hereto as **Exhibit "3"** and is incorporated herein by reference.)

11. As a result of the foregoing assignment, Signature became the successor-in-interest to ECFC with respect to the Agreement, the Collateral, and the Guaranty.

12. Signature subsequently filed an Amendment to the UCC-1 (the "UCC Amendment") with the Department of the State of the State of Florida in order to change the name of the secured party from ECFC to Signature. (A true and correct copy of Signature's UCC Amendment with respect to the Collateral is attached hereto as **Exhibit "4"** and is incorporated herein by reference.)

13. Stone accepted delivery of the Collateral and thereafter commenced making payments to ECFC and then to Signature under the terms and conditions of the Agreement. (A true and correct copy of the Prefund Addendum and Acceptance Certificate with respect to the Collateral is attached hereto as **Exhibit "5"** and the terms and conditions thereof are incorporated herein by reference.)

14. Signature is currently the holder and owner of the Agreement, as well as the indebtedness due thereunder, with a properly perfected security interest and lien in and to the Collateral.

15. The Agreement provides, inter alia, that Stone was to make each monthly installment payment as it came due, and that Stone shall be in default in the event of any failure to make any payment when due under the Agreement.

16. The Agreement further provides, inter alia, that upon the occurrence of an event of default, Signature (as assignee of ECFC) may declare and accelerate all sums due and to become due under the Agreement immediately due and payable, with all remaining installment payments scheduled to be paid under the Agreement discounted by the rate of 1.5% per annum.

17. The Agreement also provides, inter alia, that upon the occurrence of an event of default, Signature (as assignee of ECFC) may recover interest on the unpaid balance owed plus any other amounts recoverable under the Agreement from the date it becomes payable until fully paid at the rate of the lesser of 12% per annum or the highest rate permitted by law.

18. The Agreement further provides, inter alia, that any amount not paid within ten (10) days when due under the Agreement is subject to a late charge of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, but not more than the highest rate allowed by law.[1]

19. In accordance with the Agreement, Stone made two (2) monthly installment payments of $99.00 and eleven (11) monthly installment payments of $5,459.61 to Signature through and including the installment due for the month of June 2022.

20. Stone materially breached and defaulted upon the Agreement when it failed to make the required monthly payments due to Signature for the months of July 2022, August 2022, September 2022, and October 2022 (the "Default"), resulting in damages to Signature.[2]

21. By reason of the Default and in accordance with the terms of the Agreement, on November 8, 2022, Signature declared the entire balance of all unpaid installments, monies, and

---

[1] While the Agreement specifically provides for late charges of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, Signature only assessed late charges of five percent (5%) of such delinquent amount.

[2] Payments were due on July 15, 2022, August 15, 2022, September 15, 2022, and October 15, 2022.

other amounts due under the terms of the Agreement to be immediately due and payable to Signature (collectively, the "Obligations") (A true and correct copy of the Notice of Default and Acceleration dated November 8, 2022 (the "Default Notice") sent by Signature to Stone is attached hereto as **Exhibit "6"** and is incorporated herein by reference.)

22. As of November 8, 2022, the total of the Obligations was in an amount not less than $369,288.01, plus interest at 12% per annum or the per diem rate of $120.33 from and after November 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement.

23. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Agreement.

24. Despite the foregoing and demand for payment of the Obligations by Signature, Stone has failed to pay any of the Obligations to Signature.

25. By reason of the Default and Stone's failure to pay the Obligations to Signature, Stone materially breached and defaulted under the terms of the Agreement, resulting in damages to Signature.

26. The Agreement provides that in the event of a default thereunder, Stone is liable for all costs incurred by Signature in enforcing its rights, including, without limitation, attorneys' fees, costs of repossession and refurbishing of the Collateral, and collection costs.

27. As a result of the Default and Stone's failure to pay the Obligations to Signature, Signature has incurred attorneys' fees, costs, expenses, and court costs, and will continue to incur further legal fees, costs, and expenses in the enforcement of its rights and remedies. Accordingly,

Signature seeks an award for attorneys' fees and costs incurred and to be incurred, including, without limitation, for the prosecution of this action against Stone.

28. As of November 8, 2022, Stone was liable to Signature for damages in an amount not less than $369,288.01, plus interest at 12% per annum or the per diem rate of $120.33 from and after November 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement.

**WHEREFORE**, by reason of the foregoing, Signature demands judgment in its favor and against Stone for damages in the amount of $369,288.01, plus interest at the per diem rate of $120.33 from and after November 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement.

## SECOND COUNT – BREACH OF CONTRACT
### (AGAINST SANCHEZ)

29. Signature repeats and realleges the foregoing allegations of this Complaint as if fully set forth herein.

30. On or about April 5, 2021, Stone, as borrower, entered into the Agreement with ECFC, as creditor and secured party, whereby Stone agreed to purchase the Collateral and ECFC agreed to finance the purchase of the Collateral by Stone. (*See* Ex. 1, incorporated herein by reference.)

31. Pursuant to the Agreement, Stone agreed, among other things, to make two (2) installment payments each in the amount of $5,459.61, followed by three (3) installment payments each in the amount of $99.00, followed by seventy-nine (79) consecutive monthly installment payments each in the amount of $5,459.61 to ECFC (payments to be due on the fifteenth (15th)

day of each month), plus any applicable taxes and other amounts due and owing under the Agreement, as well as certain advance payments and fees set forth in the Agreement.

32. In accordance with the terms of the Agreement, Stone granted to ECFC a first priority security interest in and to the Collateral, including all replacements thereof and all receivables, rebates, discounts, credits, payments, refunds, proceeds, all accounts, general intangibles, contract rights, insurance proceeds, instruments, proceeds and products and chattel paper relating to the Collateral, to secure payment of the obligations of Stone to ECFC under the Agreement and all other then-present and future indebtedness of Stone to ECFC.

33. ECFC duly perfected its security interest in the Collateral by filing the UCC-1 with the Department of the State of the State of Florida.  (*See* Ex. 2, incorporated herein by reference.)

34. In order to induce ECFC to enter into the Agreement, and for other good and valuable consideration, Sanchez executed that certain Personal Guaranty (as any time modified and/or amended, the "Guaranty"), pursuant to which Sanchez unconditionally guaranteed to ECFC, the prompt payment and performance of the Obligations of Stone due under the Agreement. (A true and correct copy of the Guaranty is attached hereto as **Exhibit "7"** and the terms and conditions thereof are incorporated herein by reference.)

35. On or about May 20, 2021, ECFC assigned all of its right, title, and interest in and to the Agreement, the Collateral, and the Guaranty to Signature.  Specifically, ECFC assigned the remaining two (2) installment payments each in the amount of $99.00 and seventy-nine (79) monthly installment payments each in the amount of $5,459.61 due under the Agreement from Stone to Signature.  (*See* Ex. 3, incorporated herein by reference.)

36. As a result of the foregoing assignment, Signature became the successor-in-interest to ECFC with respect to the Agreement, the Collateral, and the Guaranty.

37. Signature subsequently filed the UCC Amendment with the Department of the State of the State of Florida in order to change the name of the secured party from ECFC to Signature. (*See* Ex. 4, incorporated herein by reference.)

38. Stone accepted delivery of the Collateral and thereafter commenced making payments to ECFC and then to Signature under the terms and conditions of the Agreement. (*See* Ex. 5, incorporated herein by reference.)

39. Signature is currently the holder and owner of the Agreement and Guaranty, as well as the indebtedness due thereunder, with a properly perfected security interest and lien in and to the Collateral.

40. The Agreement provides, <u>inter alia</u>, that Stone was to make each monthly installment payment as it came due, and that Stone shall be in default in the event of any failure to make any payment when due under the Agreement.

41. The Agreement further provides, <u>inter alia</u>, that upon the occurrence of an event of default, Signature (as assignee of ECFC) may declare and accelerate all sums due and to become due under the Agreement immediately due and payable, with all remaining installment payments scheduled to be paid under the Agreement discounted by the rate of 1.5% per annum.

42. The Agreement also provides, <u>inter alia</u>, that upon the occurrence of an event of default, Signature (as assignee of ECFC) may recover interest on the unpaid balance owed plus any other amounts recoverable under the Agreement from the date it becomes payable until fully paid at the rate of the lesser of 12% per annum or the highest rate permitted by law.

43. The Agreement further provides, <u>inter alia</u>, that any amount not paid within ten (10) days when due under the Agreement is subject to a late charge of the greater of fifty dollars

($50.00) or ten percent (10%) of such delinquent amount, but not more than the highest rate allowed by law.[3]

44. In accordance with the Agreement, Stone made two (2) monthly installment payments of $99.00 and eleven (11) monthly installment payments of $5,459.61 to Signature through and including the installment due for the month of June 2022.

45. Stone materially breached and defaulted upon the Agreement when it failed to make the required monthly payments due to Signature for the months of July 2022, August 2022, September 2022, and October 2022, resulting in damages to Signature.[4]

46. By reason of the Default and in accordance with the terms of the Agreement, on November 8, 2022, Signature declared the Obligations to be immediately due and payable to Signature. (*See* Ex. 6, incorporated herein by reference.)

47. As of November 8, 2022, the total of the Obligations was in an amount not less than $369,288.01, plus interest at 12% per annum or the per diem rate of $120.33 from and after November 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement.

48. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Agreement.

49. Despite the foregoing and demand for payment of the Obligations by Signature, Stone has failed to pay any of the Obligations to Signature.

---

[3] While the Agreement specifically provides for late charges of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, Signature only assessed late charges of five percent (5%) of such delinquent amount.

[4] Payments were due on July 15, 2022, August 15, 2022, September 15, 2022, and October 15, 2022.

50. By reason of the Default and Stone's failure to pay the Obligations to Signature, Stone materially breached and defaulted under the terms of the Agreement, resulting in damages to Signature.

51. The Agreement provides that in the event of a default thereunder, Stone is liable for all costs incurred by Signature in enforcing its rights, including, without limitation, attorneys' fees, costs of repossession and refurbishing of the Collateral, and collection costs.

52. As a result of the Default and Stone's failure to pay the Obligations to Signature, Signature has incurred attorneys' fees, costs, expenses, and court costs, and will continue to incur further legal fees, costs, and expenses in the enforcement of its rights and remedies. Accordingly, Signature seeks an award for attorneys' fees and costs incurred and to be incurred, including, without limitation, for the prosecution of this action against Stone.

53. By reason of the Default and Stone's failure to pay the Obligations to Signature, Signature has suffered damages in an amount not less than $369,288.01, plus interest at 12% per annum or the per diem rate of $120.33 from and after November 8, 2022, attorneys' fees, costs and any other amounts, including applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement, all of which continue to accrue.

54. Signature has made demand on Sanchez for payment of the Obligations of Stone to Signature arising under the Agreement.

55. Despite the Default and demand for payment of the Obligations by Signature, Sanchez has failed to pay any of the Obligations to Signature.

56. By reason of Sanchez's failure to pay any of the Obligations to Signature, Sanchez materially breached and defaulted under the terms of the Guaranty, resulting in damages to Signature.

57. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Guaranty.

58. The Guaranty provides that Sanchez is liable for all expenses, including attorneys' fees, incurred by Signature in enforcing its rights under the Agreement and Guaranty.

59. As a result of Sanchez's default upon the Guaranty, Signature has incurred attorneys' fees, expenses, and court costs and will continue to incur further legal expenses in the enforcement of its rights and remedies. Accordingly, Signature seeks an award for attorneys' fees and costs incurred for the prosecution of its claims under the Guaranty in this action against Sanchez.

60. As of November 8, 2022, Sanchez was liable to Signature for damages in an amount not less than $369,288.01, plus interest at 12% per annum or the per diem rate of $120.33 from and after November 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement and Guaranty.

**WHEREFORE**, by reason of the foregoing, Signature demands judgment in its favor and against Sanchez for damages in the amount of $369,288.01, plus interest at the per diem rate of $120.33 from and after November 8, 2022, attorneys' fees, costs and any other amounts, including, without limitation, applicable taxes and any costs incurred and to be incurred by Signature to recover the Collateral, due under the terms of the Agreement and Guaranty.

## THIRD COUNT - REPLEVIN
## (AGAINST STONE)

61. Signature repeats and realleges the foregoing allegations of this Complaint as if fully set forth herein.

62. This claim is brought pursuant to Florida Statute, Title VI, Chapter 78 et. seq. and Rule 64 of the Federal Rules of Civil Procedure.

63. On or about April 5, 2021, Stone, as borrower, entered into the Agreement with ECFC, as creditor and secured party, whereby Stone agreed to purchase the Collateral and ECFC agreed to finance the purchase of the Collateral by Stone. (*See* Ex. 1, incorporated herein by reference.)

64. Pursuant to the Agreement, Stone agreed, among other things, to make two (2) installment payments each in the amount of $5,459.61, followed by three (3) installment payments each in the amount of $99.00, followed by seventy-nine (79) consecutive monthly installment payments each in the amount of $5,459.61 to ECFC (payments to be due on the fifteenth (15th) day of each month), plus any applicable taxes and other amounts due and owing under the Agreement, as well as certain advance payments and fees set forth in the Agreement.

65. In accordance with the terms of the Agreement, Stone granted to ECFC a first priority security interest in and to the Collateral, including all replacements thereof and all receivables, rebates, discounts, credits, payments, refunds, proceeds, all accounts, general intangibles, contract rights, insurance proceeds, instruments, proceeds and products and chattel paper relating to the Collateral, to secure payment of the obligations of Stone to ECFC under the Agreement and all other then-present and future indebtedness of Stone to ECFC.

66. ECFC duly perfected its security interest in the Collateral by filing the UCC-1 with the Department of the State of the State of Florida. (*See* Ex. 2, incorporated herein by reference.)

67. On or about May 20, 2021, ECFC assigned all of its right, title, and interest in and to the Agreement, the Collateral, and the Guaranty to Signature. Specifically, ECFC assigned the remaining two (2) installment payments each in the amount of $99.00 and seventy-nine (79) monthly installment payments each in the amount of $5,459.61 due under the Agreement from Stone to Signature. (*See* Ex. 3, incorporated herein by reference.)

68. As a result of the foregoing assignment, Signature became the successor-in-interest to ECFC with respect to the Agreement, the Collateral, and the Guaranty.

69. Signature subsequently filed the UCC Amendment with the Department of the State of the State of Florida in order to change the name of the secured party from ECFC to Signature. (*See* Ex. 4, incorporated herein by reference.)

70. Stone accepted delivery of the Collateral and thereafter commenced making payments to ECFC and then to Signature under the terms and conditions of the Agreement. (*See* Ex. 5, incorporated herein by reference.)

71. Signature is currently the holder and owner of the Agreement, as well as the indebtedness due thereunder, with a properly perfected security interest and lien in and to the Collateral.

72. The Agreement provides, inter alia, that Stone was to make each monthly installment payment as it came due, and that Stone shall be in default in the event of any failure to make any payment when due under the Agreement.

73. The Agreement further provides, inter alia, that upon the occurrence of an event of default, Signature (as assignee of ECFC) may declare and accelerate all sums due and to become due under the Agreement immediately due and payable, with all remaining installment payments scheduled to be paid under the Agreement discounted by the rate of 1.5% per annum.

74. The Agreement also provides, inter alia, that upon the occurrence of an event of default, Signature (as assignee of ECFC) may recover interest on the unpaid balance owed plus any other amounts recoverable under the Agreement from the date it becomes payable until fully paid at the rate of the lesser of 12% per annum or the highest rate permitted by law.

75. The Agreement further provides, inter alia, that any amount not paid within ten (10) days when due under the Agreement is subject to a late charge of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, but not more than the highest rate allowed by law.[5]

76. In accordance with the terms of the Agreement, upon the event of a default by Stone under the Agreement, Signature is entitled to take possession of the Collateral.

77. In accordance with the Agreement, Stone made two (2) monthly installment payments of $99.00 and eleven (11) monthly installment payments of $5,459.61 to Signature through and including the installment due for the month of June 2022.

78. Stone materially breached and defaulted upon the Agreement when it failed to make the required monthly payments due to Signature for the months of July 2022, August 2022, September 2022, and October 2022, resulting in damages to Signature.[6]

79. By reason of the Default and in accordance with the terms of the Agreement, on November 8, 2022, Signature declared the Obligations to be immediately due and payable to Signature. (See Ex. 6, incorporated herein by reference.)

---

[5] While the Agreement specifically provides for late charges of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, Signature only assessed late charges of five percent (5%) of such delinquent amount.

[6] Payments were due on July 15, 2022, August 15, 2022, September 15, 2022, and October 15, 2022.

80. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Agreement.

81. Despite the foregoing and demand for payment of the Obligations by Signature, Stone has failed to pay any of the Obligations to Signature.

82. As a result of the Default and Stone's failure to pay the Obligations to Signature, Signature is entitled to take possession of the Collateral.

83. The Collateral is being wrongfully detained by Stone.

84. Upon information and belief, Stone is in possession and control of the Collateral.

85. Upon information and belief, the Collateral is located at 5115 Shadowlawn Avenue, Tampa, Florida 33610.

86. Upon information and belief, the estimated orderly liquidation value of the Collateral is approximately $160,000.00.

87. Demand is hereby made by Signature for the immediate possession of the Collateral.

88. Due to the Default, Signature's right to possession of the Collateral is superior to any right Stone or Sanchez may have in the Collateral and Defendants' continued detention thereof is wrongful.

89. Upon information and belief, the Collateral has not been taken for any tax, assessment or fine levied by virtue of any laws of the State of Florida.

90. Upon information and belief, the Collateral has not been taken under an execution or attachment against the property of Signature.

91. Upon information and belief, Stone is refusing to surrender the Collateral to Signature in order to avoid repossession by Signature and in order that Stone continue to profit from its use.

**WHEREFORE**, by reason of the foregoing, Signature respectfully requests that this Court enter a judgment of possession awarding Signature the right to replevin and to take immediate possession of the Collateral wherever it may be located.

Dated:  December 8, 2022                                             Respectfully submitted,

                                                                     PRYOR CASHMAN LLP


                                            By:     s/ *Hans H. Hertell*
                                                    Hans H. Hertell
                                                    Florida Bar No. 71969
                                                    Pryor Cashman LLP
                                                    255 Alhambra Circle, 8th Floor
                                                    Miami, FL 33134
                                                    Tel:  (786) 582-3011
                                                    Fax:  (786) 582-3004
                                                    Email: hhertell@pryorcashman.com
                                                               ksuarez@pryorcashman.com


                                                    *Attorney for Signature Financial LLC,*
                                                    *d/b/a Signature Financial and*
                                                    *Leasing LLC*