UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SIGNATURE FINANCIAL LLC,

    Plaintiff,

v.                                                                                 Case No. 8:22-cv-2795-VMC-NHA

THE STONE OUTLET OF
FLORIDA, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATIONS

The Court awarded Plaintiff Signature Financial, LLC default judgment against Defendants The Stone Outlet of Florida, LLC and Ernesto Sanchez, and ordered Plaintiff to specify whether it sought monetary damages, recovery of the Table Machining Center, or both. Docs. 41, 43. Plaintiff opted to seek monetary damages, at this time.[1] Doc. 42. Having reviewed Plaintiff's briefings on damages (Docs. 30, 42), and having had the benefit of a hearing regarding Plaintiff's position thereon (Doc. 46), I recommend Plaintiff's Motion for Damages be granted in part, and that Plaintiff be awarded $359,041.03 in

---

[1] I construe Plaintiff's Motion for Miscellaneous Relief (Doc. 42) as a motion for damages.

damages, as well as post-judgment interest to accrue at the legal rate provided by 28 U.S.C. § 1961.

## I. Background

Plaintiff is a New York banking business. Compl. (Doc. 1) ¶ 1. Stone Outlet is a Tampa business owned by Mr. Sanchez. *Id.* ¶ 2.

### a. The Finance Agreement and Guaranty

On April 5, 2021, Stone Outlet purchased from Poseidon Industries a T-Rex X Dual Table Machining Center, along with its accessories, attachments, and components. *Id.* ¶¶ 6, 30, 63; Finance Agrmt. (Doc. 1-2), Acceptance Cert. (Doc. 1-6). To finance the $340,000 purchase, Stone Outlet entered into a Commercial Finance Agreement with Engs Commercial Finance Company. Compl. (Doc. 1) ¶¶ 6, 30, 63; Finance Agrmt. (Doc. 1-2), p. 2. The Finance Agreement required Stone Outlet to make monthly payments to Engs for 84 months. Compl. (Doc. 1) ¶¶ 7, 31, 64; Finance Agrmt. (Doc. 1-2), pp. 2, 4-5. The payments were due monthly on the 15th of each month: first, two payments of $5,459.61; then, three payments of $99.00; and finally, 79 payments of $5,459.61. Finance Agrmt. (Doc. 1-2), p. 2; Compl. (Doc. 1) ¶ 7.

Mr. Sanchez also signed a Personal Guaranty with Engs, "unconditionally and irrevocably guarantee[ing] to [Engs], [Stone Outlet's] payment and performance" under the Finance Agreement. Guaranty (Doc. 1-8); Compl. (Doc. 1) ¶ 34.

b. The Assignment

On May 20, 2021, Engs assigned its rights under the Finance Agreement and the Personal Guaranty to Plaintiff. Assignment (Doc. 1-4), Doc. 1 ¶¶ 10, 35, 67.

c. The Default

Stone Outlet made monthly payments to Plaintiff from June 2021 to June 2022. Compl. (Doc. 1) ¶¶ 19, 44. Then, in July, August, September, and October 2022, Stone Outlet failed to make payment. *Id.* ¶¶ 20, 45, 78. This constituted a default under the Finance Agreement. Finance Agrmt. (Doc. 1-2), ¶ 15. And, the default triggered Mr. Sanchez's liability under the Personal Guaranty. Personal Guaranty (Doc. 1-8).

The Finance Agreement gave Plaintiff different options upon Stone Outlet's default. Finance Agrmt. (Doc. 1-2), ¶ 15. Plaintiff could "accelerate the unpaid balance due" and require Stone Outlet and Mr. Sanchez to pay the "Accelerated Balance," defined as the total of all unpaid amounts and the sum of the remaining installment payments scheduled, discounted by the rate of 1.5% per annum. *Id.* This is what Plaintiff did; on November 8, 2022, Plaintiff notified Stone Outlet and Mr. Sanchez that it had accelerated the balance and Stone Outlet and Mr. Sanchez owed "$366,012.25, plus $3,275.76 in late charges." Notice of Default (Doc. 1-7). Stone Outlet and Mr. Sanchez did not make any payments. Compl. (Doc. 1) ¶¶ 24, 55.

## II.   Procedural History

On December 8, 2022, Plaintiff brought this lawsuit, alleging that Stone Outlet breached the Finance Agreement (Count One); alleging that Mr. Sanchez breached the Personal Guaranty (Count Two); and asserting replevin rights under Chapter 78, Florida Statutes, and Rule 64 of the Federal Rules of Civil Procedure (Count Three).

Plaintiff attempted service on Stone Outlet on January 3, 2023 (Doc. 8), and on Mr. Sanchez on January 11, 2023 (Doc. 9), but neither Defendant appeared to defend this lawsuit. On February 3, 2023, Plaintiff moved for entry of Clerk's default against the Defendants (Doc. 11), which the Court granted on February 6, 2023 (Doc. 13).

On February 27, 2023, Plaintiff moved for final default judgment against both Defendants. Doc. 15. Upon examination, however, the Court found that Plaintiff had not perfected service on Stone Outlet. Doc. 19. The Court vacated the Clerk's default against Stone Outlet and denied the motion for default judgment without prejudice. *Id.*, pp. 6-7. Plaintiff re-attempted service on Stone Outlet (Doc. 23) and, when Stone Outlet failed to timely answer or defend, Plaintiff again moved for entry of Clerk's default against it (Doc. 26), which the Court granted (Doc. 28). Plaintiff then moved again for final default judgment against both Defendants. Doc. 30.

The Court granted Plaintiff's motion to the extent it sought default judgment and entered judgment for Plaintiff and against Stone Outlet on Count One (breach of contract); judgment for Plaintiff and against Mr. Sanchez on Count Two (breach of guaranty); and judgment for Plaintiff and against Stone Outlet on Count Three (replevin). Docs. 41, 43. However, the Court found that recovery of both collateral and monetary damages risked an impermissible over-recovery, and directed Plaintiff to specify whether it sought monetary damages, recovery of the Table Machining Center, or both. Docs. 41, 43.

On February 13, 2024, Plaintiff filed a motion indicating that it presently sought monetary damages. Doc. 42, ¶ 5. Plaintiff additionally noted that, while it did not presently seek recovery of the Table Machining Center, it might seek that recovery in the future, if unable to recover monetary damages. *Id.* at ¶ 6.

The Court conducted a hearing on March 7, 2024, to discuss Plaintiff's calculation of damages. The Court notified Plaintiff that it found insufficient support for Plaintiff's calculation of damages ($369,288.01) and found the evidence supported a recovery of $359,041.03 instead. Doc. 46. The Court offered Plaintiff an opportunity to submit support for and an explanation of the calculations underlying its damages request or, alternatively, to accept the Court's calculation. Plaintiff elected to accept the Court's damages calculation. *Id.*

5

At no point have Defendants appeared in or otherwise demonstrated an intent to defend this case.

### III. Standard of Review

The damages a plaintiff requests after entry of default judgment are not deemed proven simply by default; rather, the Court must still determine the amount and type of damages to award. *Anheuser Busch, Inc. v. Philpot,* 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters."); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985). If, to enter or effectuate judgment, it is necessary to conduct an accounting to determine damages, the court may conduct hearings or make referrals as it deems necessary. Fed. R. Civ. P. 55(b)(2). But damages may be awarded "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n.13 (11th Cir. 2005) (quoting *Adolph*, 777 F.2d at 1544); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a hearing is unnecessary if sufficient evidence supports the request for damages).

## IV. Analysis

All the essential evidence regarding damages is now in record. *See S.E.C.*, 420 F.3d 1225, 1231-33. The Finance Agreement demanded 84 payments, due monthly on the 15th of each month: first, two payments of $5,459.61; then three payments of $99.00; and finally, 79 payments of $5,459.61. Finance Agrmt. (Doc. 1-2), p. 2; Compl. (Doc. 1) ¶ 7. Plaintiff alleges that Stone Outlet paid the first two payments of $5,459.61, the next three payments of $99.00 and then 11 payments of $5,459.61. Compl. (Doc. 1) ¶¶ 13, 19. Stone Outlet missed its $5,459.61 payments due on July 15, August 15, September 15, and October 15, 2022. Compl. (Doc. 1) ¶ 20; Finance Agrmt. (Doc. 1-2) ¶ 15. The default triggered Mr. Sanchez's liability under the Personal Guaranty. Personal Guaranty (Doc. 1-8); *see also Vill. of Rosemont v. Lentin Lumber Co.*, 494 N.E.2d 592, 603 (Ill. Ct. App. 1986) (noting the measure of damages for a guarantor is measured by the liability of its principal under the contract).

The Finance Agreement availed Plaintiff of different options upon Stone Outlet's default under the Finance Agreement. Finance Agrmt. (Doc. 1-2), ¶ 15. Relevant here, Plaintiff could "accelerate the unpaid balance due" and require Stone Outlet and Mr. Sanchez to pay the "Accelerated Balance," defined as the total of all unpaid amounts and the sum of the remaining installment payments scheduled, discounted by the rate of 1.5% per annum.

7

Finance Agrmt. (Doc. 1-2), ¶ 15. This is what Plaintiff did; on November 8, 2022, Plaintiff notified Stone Outlet and Mr. Sanchez that it had accelerated the balance and Stone Outlet and Mr. Sanchez owed "$366,012.25, plus $3,275.76 in late charges." Notice of Default (Doc. 1-7). This is the amount that Plaintiff now asks the Court to award.

However, damages are not admitted by default, and the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch,* 317 F.3d at 1266. Here, in calculating the accelerated balance that Plaintiff seeks, the Court finds the damages to be slightly less than Plaintiff asserts.

The "Accelerated Balance" comprises the missed payments ("unpaid balance"), the late charges, and the remaining payments. Finance Agrmt. (Doc. 1-2), ¶ 15.

First, as of November 8, 2022, the "unpaid balance" consisted of four missed payments of $5,459.61; totaling $21,838.44.

The Finance Agreement imposed late charges, specifying, "If [Stone Outlet] fail[s] to pay any sum due under [the Finance Agreement] within ten (10) days after its due date . . . [Stone Outlet] agree[s] to pay us a late charge . . . equal to the greater of $50 or 10% of the Late Payment not to exceed the maximum amount permitted by law." Finance Agrmt. (Doc. 1-2) ¶ 16. Plaintiff

8

asserts it sought late fees of 5% for each of the four late payments. Compl. (Doc. 1) ¶ 18, n.1. This equates to $272.98 for each late payment, totaling $1091.92.[2]

Finally, as to the remaining balance, excluding the four payments already missed as of November 8, 2022, there were 64 outstanding payments of $5,459.61. Compl. (Doc. 1) ¶¶ 7, 13, 19. Discounting each future payment, based on the month on which it was owed, by 1.5% per annum, the remaining balance owed was $336,110.67.

Thus, the Accelerated Balance (consisting of unpaid balance, late fees, and remaining balance) as of November 8, 2022, is $359,041.03. Plaintiff accepts this amount. *See* Doc. 46. Plaintiff does not seek prejudgment interest.[3] Doc. 30, p. 18, n.3.

## V. Conclusion

For the reasons stated, I RECOMMEND Plaintiff's Motion for Miscellaneous Relief (Doc. 42) be GRANTED in part.

---

[2] This is less than the late fees Plaintiff declared were unpaid on November 8, 2022. Notice of Default (Doc. 1-7). However, Plaintiff provides no calculations with which to support its damages figures, and the Finance Agreement, by its plain language, only allows for one late charge per late payment. There were only four late payments as of November 8, 2022.

[3] Likewise, Plaintiff does not ask the Court to award attorneys' fees nor the costs incurred in repossessing the collateral, despite the Finance Agreement allowing for both. *See* Doc. 30, p. 3; Finance Agreement (Doc. 1-2) ¶ 15.

I recommend Defendants Stone Outlet and Mr. Sanchez be found jointly and severally liable to Plaintiff for a money judgment in the amount of $359,041.03, plus post-judgment interest accruing at the legal rate from the date of the Court's Order.

Finally, to the extent Plaintiff later seeks to recover the Table Machining Center to satisfy the judgment, Plaintiff may do so to the extent allowable under Federal Rule of Civil Procedure 69.[4]

Submitted for the District Court's consideration in Tampa, Florida, on March 18, 2024.

*Natalie Hirt Adams*
NATALIE HIRT ADAMS
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts

---

[4] Pursuant to Rule 69(a)(1) of the Federal Rules of Civil Procedure, a money judgment from this Court must be enforced pursuant to the procedures for execution of judgment in the state where this Court is located, Florida. Under Florida law, a judgment creditor may levy his/her monetary judgment on "[l]and and tenements, goods and chattels, equities of redemption in real and personal property, and stock in corporation." § 56.061, Fla. Stat.

10

from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.